CHARLES R. CHESNUTT, P.C.
2608 Hibernia Street, Office 107
Dallas TX 75204

COUNSEL FOR LUCKY INVESTMENTS, INC. and
SALEEM TAREEN

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

IN RE:                                                        CASE NO. 22-42220-elm-7

    ASIM A. RAHIM

DEBTOR

_____

LUCKY INVESTMENTS, INC. and
SALEEM TAREEN,
    Plaintiffs

versus

ASIM A. RAHIM and
NIDA MEHWISH
    Defendants

_____

## COMPLAINT AGAINST DISCHARGE

TO THE HONORABLE EDWARD L. MORRIS
UNITED STATES BANKRUPTCY JUDGE

Now comes Lucky Investments, Inc., a creditor in the above captioned matter, and Saleem Tareen and would show the Court the following:

### Jurisdiction

This is a complaint against discharge. It is therefore a core proceeding and this Court has jurisdiction pursuant to 28 USC §157. This action is both related to the

1

underlying bankruptcy proceeding and arising out of the underlying bankruptcy. The non-debtor co-defendant was complicit with the Debtor and her acts were parallel to those of the Debtor. Therefore, this Court has "related to" jurisdiction over the non-debtor co-defendant.

## Background

Lucky Investments (dba Jet Cleaners) was a dry-cleaning business with 6 locations in and around Crowley Texas and 18 employees. Saleem Tareen owned and operated Lucky and owned 3 of the 6 locations. On December 12, 2019, Lucky sold its assets and the dba Jet Cleaners to Dry Kings LLC for $90,000 in cash and a note for $310,000 that was secured by a perfected lien against the assets of Dry Kings. At the time of sale, Lucky had been owned and operated by Saleem Tareen for 30 years and had 21 employees. Rahim is the 100% owner of Dry Kings; he guaranteed the note and operated the business. Dry Kings defaulted and Lucky offered workouts, but Rahim refused. Lucky eventually sued Rahim and Dry Kings for $249,873 on August 1, 2022. This Chapter 7 was filed as a no-asset case on September 22, 2022 before Lucky could obtain a judgment.

At all times relevant, Asim Rahim and his wife Nida Mehwish were in complete control of Dry Kings and all acts alleged herein were intentional.

## Conventions in this Complaint

All references to sections herein refer to sections of the U.S. Bankruptcy Code, Title 11 of the United States Code unless otherwise indicated.

## Allegations

*The Promissory Note*

1. Lucky is a creditor of this estate and Rahim is indebted to Lucky for $249,873, plus interest and attorney fees for the failure to pay the promissory note.

*The Violations*

2. On or about July 25, 2022, Tareen entered into the three locations that he owned and discovered that *all* of the Lucky collateral had been removed from all 3 locations, including security monitoring equipment. The only things that remained were things that were bolted to the structure.

3. Lucky conducted an agreed 2004 exam and Rahim testified in relevant part as follows:

   > Q.    Okay. Did your stores have any equipment or furniture in them when they closed?
   >
   > A.    Yes.
   >
   > Q.    Okay. And what happened to that equipment and furniture?
   >
   > A.    We left in the store.
   >
   > Q.    Okay. Did you ever take out any furniture, fixtures, or equipment from any of the stores?
   >
   > A.    No. not the furniture and equipment, no.

4. The statement made by Rahim in the 2004 examination is a false statement made under oath in connection with this case. Therefore, Rahim violated §727(a)(4) by making this statement.

5. The removal of personal property and the subsequent false oath regarding its removal constitutes the concealment of assets of the estate or property of the

debtor. If the property was removed prior to the commencement of the case, it is a violation of §727(a)(2)(A).[1] If the property was removed after the commencement of the case, it was a violation of §727(a)(2)(B).[1] Hence, Rahim has violated §727(a)(2)[1] in any respect.

6. The removal of personal property as reflected in the previous paragraph constitutes an act with the intent to hinder, delay a creditor of this estate. Rahim violated §727(a)(2)[1] in this regard and in others instances as well.

7. In his 2004 exam Rahim testified as follows:

> Q.   Okay. So when you closed it down all of the furniture, fixtures, and equipment that was originally in the stores was still on the premises; is that correct?
>
> A.   Fixtures, furniture, yeah. We – you know, there was a conveyor system, so we didn't take out none of the stuff. We left it as – yeah.
>
> Q.   Left it as it is?
>
> A.   Yes.
>
> Q.   Okay. All right. And so what happened to it, is it still there or where would – where would I look for it in the event that I wanted to find it or take a picture of it?
>
> A.   I don't know. I mean, we left it there so – so the landlords . . .

8. The statement by Rahim in the previous paragraph and other instances in his deposition is false and is therefore a violation of §727(a)(4)[2]. Also, the statement

---

[1] (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition;

[2] (4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account;

constitutes the failure of a debtor to explain satisfactorily a loss or assets. It is therefore a violation of §727(a)(5).[3]

9. In response to Lucky's request for production at the 2004 examination, Rahim produced copies of his bank statements. However, the bank statements had been altered by removing the data on several of the pages. This is a false account and is a violation of §727(a)(4)(A).[2]

10. Within one year prior to the commencement of this case, Rahim instructed several employees not to record certain sales transactions and other instructions. These were transactions that the employees had for years previously recorded in the normal course of business.

11. The instruction not to record the transactions and other instructions constitutes the failure to keep or preserve recorded information from which the Debtor's financial condition or business transactions might be ascertained. By issuing these instructions, Rahim violated §727(a)(3).[4]

12. When Rahim instructed employees not to record certain transactions, he was instructing persons who were employed by and paid wages by Dry Kings, which Rahim controlled. Rahim could have fired them if they did not comply or he could have continued to pay them if they did comply. Several employees did

---

[3] (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

[4] (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

comply and Dry Kings continued to pay them. The instruction not to record transactions by an employer with the power to fire constitutes an offer of a promise of money or advantage for acting or forbearing to act in connection with financial records of this case. Rahim therefore violated §727(a)(4)(C)[5] for this reason and others.

13. Some of the receipts were neither recorded nor deposited in the corporate bank account and, upon information and belief, were not disclosed in the bankruptcy schedules. This is a violation of §727(a)(2),[1] (a)(5)[3] and (a)(7)[6] for the reasons stated and others.

14. This also constitutes a failure to keep or preserve recorded information in violation of §727(a)(3).[4]

15. Upon information and belief, Rahim cannot account for the use of $100,000 in PPP loan receipts. This is a violation of §727(a)(5).[3]

16. The removal of the Lucky collateral is a violation of Section 32.33 of the Texas Penal Code and an intentional tort against Lucky for which Lucky is entitled to damages.

17. The removal of the Lucky collateral is the tort of conversion for which Rahim and Mehwish are liable to Lucky for damages.

---

[5] (4) the debtor knowingly and fraudulently, in or in connection with the case—
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act;

[6] (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case

18. In June and July of 2022, Rahim requested an extension of credit in the form of an extension of time to pay rent. The reasons provided were false and in violation of §523(a)(2).[7]

19. Representations made by Rahim for the purpose of inducing Lucky into renting, extending credit and the sale of its assets to Dry Kings were false and fraudulent. Lucky would not have engaged in any transaction with Rahim if it had been aware of the falsity of these representations. Rahim has therefore violated §523(a)(4).[8]

20. The removal and concealment of the Lucky collateral and other acts of concealment and non-disclosure constitutes both willful and malicious injury and larceny. Rahim is therefore in violation of §523(a)(4)[2] and §523(a)(6).[9]

21. Real and personal property owned by Lucky or Tareen suffered damages due to structural failures and other failures. These were covered by insurance. Lucky repaired the damage and the insurance benefits were paid to Dry Kings. Dry Kings was obligated to forward the proceeds to Lucky but failed to do so and is therefore liable to Lucky for the sum of the insurance payments that it received for damages which were repaired by Lucky.

---

[7] (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

[8] (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

[9] (6) for willful and malicious injury by the debtor to another entity or to the property of another entity

22. Representations of Rahim regarding his income and expenses on his schedules are inaccurate. Rahim is therefore in violation of §727(a)(4).[2]

23. To the extent that any allegation in this complaint does not apply to injuries committed against Lucky Investments, Inc., those injuries were committed against Saleen Tareen individually.

*Conspiracy*

24. At all times relevant herein Mehwish was complicit with Rahim and intended to aid in the perpetration of these acts and she was aware of the intention of Rahim to file this case.

25. Taken together, the acts of Rahim and Mehwish were a conspiracy to effectively gut Dry Kings. They failed to keep records or concealed them and sold or secreted the Lucky collateral. They removed all significant value from Dry Kings and attempted to cover up what they did with a Chapter 7 and discharge their victim.

26. Rahim and Nida Mehwish were at all times complicit and aware of what they were doing.

27. Rahim and Nida Mehwish are liable to Lucky for damages and punitive damages.

*Damages*

28. The automatic stay does not prohibit a demand for damages in the context of a Complaint Against Discharge. Alternatively, Lucky would move the Court to issue an order granting leave to demand a judgment for damages against the Debtor.

8

29. Lucky has been damaged no less that the following:

| | |
|---|---|
| $249,873 | Breach of contract |
| $50,000 | Loss of collateral |
| $25,000 | Back rent (estimated) |
| $500,000 | Punitive damages |
| $50,000 | Attorney fees |
| $874,873 | TOTAL |

WHEREFORE, Lucky Investments, Inc. and (to an extent determined by the Court), Saleem Tareen, Lucky and Tareen would move the Court to issue a judgment of non-dischargeability against Asim Rahim, to find that the automatic stay does not prevent a money judgment against Asim Rahim and to issue a judgment against Asim Rahim in an amount no less than $874,873 and a judgment against Nida Mehwish jointly with Asim Rahim in the amount no less than $600,000.

Respectfully submitted by,

s/ Charles R. Chesnutt

CHARLES R. CHESNUTT, P.C.
2608 Hibernia Street, Office 107
Dallas TX 75204    Texas Bar 04186800

_____

972.248.7000
972.559.1872 (fax)
crc@chapter7-11.com

COUNSEL FOR LUCKY INVESTMENTS, INC. and
SALEEM TAREEN

## Certificate of Service

  The undersigned hereby certifies that on Saturday, December 17, 2022 he caused a copy of the above and foregoing to be served on all those requesting service and on

Mark B. French
Law Office of Mark B. French
1901 Central Drive Suite 704
Bedford, TX 76021

marksndecf@markfrenchlaw.com        VIA email and ECF

s/ Charles R. Chesnutt